IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY SCOTT BOWMAN,

    Petitioner,                                 No. CIV S-06-0314 FCD CMK P

    v.

JOSEPH S. WARCHOL, et al.,

    Respondents.

_____/     ORDER

        On July 18, 2006, this matter came on for hearing on petitioner's motion for an evidentiary hearing and on petitioner's motion for discovery and/or an expanded record. Respondent did not file a reply to petitioner's motions. Neither party appeared, and the court took the matter under advisement.

        Petitioner was convicted of two counts of non-forcible penetration of a minor on March 11, 2003. He was sentenced to two years, eight months in prison, suspended, and placed on three years supervised probation. This sentence was conditioned on petitioner spending one year in the county jail, registering as a sex offender, paying restitution to the complaining witness, and attending sex offender classes. The case against petitioner was largely based on the testimony of C.V., the minor victim, and a tape recording of a pretext phone call made to petitioner by C.V.'s mother.

1    Petitioner claims that newly discovered evidence in the form of expert testimony
2 shows that he did not admit to sexual misconduct in the pretext call. Following his conviction,
3 petitioner hired a forensic audio expert, Dr. Durand R. Begault, to review the pretext tape.
4 Petitioner's expert opined that a word that the prosecution had identified as "it" on a transcript[1]
5 prepared for the jury to read along with while the pretext tape was played was actually an
6 unintelligible sound and could have been "eh" or "ep."
7    Petitioner further claims that newly discovered evidence shows that CW made
8 false accusations of abuse and molestation against others, including managers at her workplace,
9 her father, and a foster family with whom she was placed. Petitioner claims that, at the time of
10 his trial, CW was the subject of a dependency hearing because she had accused her father of
11 abusing her. Petitioner believes that CW withdrew these accusations, indicating that they were
12 false.
13 I.    The Motion to Expand Discovery
14    Petitioner moves to expand the record pursuant to Rule 6 of the Rules governing
15 28 U.S.C. § 2254 habeas cases. Petitioner requests that the court order the Placer County
16 Juvenile Court to transmit case files relating to C.V.'s juvenile dependency hearing to the court
17 for an in camera review. Following review, petitioner seeks discovery of any material relevant to
18 his assertion that C.V. had falsely accused others of sexual abuse. Petitioner argues that these
19 records are essential to the full development of his Brady[2] claim that the prosecutor wrongly
20 withheld evidence that C.V. falsely accused others, which was material to plaintiff's guilt.
21 ///

---

[1] The transcripts were collected from the jury after the tape was played, and the transcripts were not admitted into evidence.

[2] Brady v. Maryland, 373 U.S. 83, 87 (1963) Prosecutors have a duty under due process to disclose evidence favorable to an accused upon request, where such evidence is material either to guilt or punishment. See id. Both exculpatory and impeachment evidence falls within the Brady rule. See id.

2

1    It is the duty of a district court to allow a petitioner to expand the record when
2  "specific allegations before the court show reason to believe that petitioner may, if the facts are
3  fully developed, be able to demonstrate that he is entitled to relief..." Bracy v. Gramley, 520 U.S.
4  899, 908-09 (1997).  Petitioner points out that when a sex abuse case turns on the credibility of
5  the complaining witness, exclusion of evidence bearing adversely on the complaining witness's
6  credibility, such as false accusations of sexual abuse against others, tends to deprive a defendant
7  of a fair trial.  Here, however, petitioner was able to introduce evidence at trial that C.V.'s
8  mother believed that C.V. fabricated stories of abuse to get attention, and petitioner was able to
9  cross-examine C.V. about her allegations that others, including her father, had abused her.  (CT
10 55:18-22, RT 319-320.)  In other words, petitioner has already been allowed to fully develop his
11 claim that C.V. falsely accused others.  Additionally, the record is very clear that the prosecution
12 disclosed to petitioner's trial counsel that C.V. had made allegations of abuse against her father
13 and had been removed to a foster home.  (CT 96:1-25.)
14    The court finds that petitioner has not shown good cause for expanding the record
15 and conducting discovery of C.V.'s dependency hearings.  The court denies motion for discovery
16 and/or an expanded record.
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///

II. <u>The Motion For An Evidentiary Hearing</u>

Petitioner seeks an evidentiary hearing on the following issues:

1. Newly discovered evidence, including Dr. Begault's tape analysis, Suliman/Quinones[3] and other newly discovered evidence by petitioner's investigator

2. The juvenile dependency records, which petitioner argues raise a <u>Brady</u> issue

3. Ineffective Assistance of Counsel–presumably that trial counsel was ineffective in failing to object to the prosecutor's characterization of what was on the pretext tape; that counsel was ineffective in failing to hire an audio expert to testify about the tape; and that counsel was ineffective in failing to discover and/or call Suliman and Quinones.

Title 28 U.S.C. § 2254(e)(2) sets forth the circumstances under which a habeas petitioner is entitled to an evidentiary hearing. Under the statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." <u>Baja v. Ducharme</u>, 187 F.3d 1075, 1078 (9th Cir.1999). <u>See</u> <u>also</u> <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 669-70 (9th Cir.2005). As discussed more fully below, petitioner has not demonstrated that any additional facts need be determined for a fair resolution of the merits of any of his claims. <u>See</u> <u>Totten v. Merkle</u>, 137 F.3d 1172, 1176 (9th Cir. 1998) (an evidentiary hearing is not required where the issues may be resolved on the basis of the state court record). Thus, petitioner has failed to overcome the initial hurdle identified above.

Even assuming arguendo that additional facts need be determined and that petitioner did not receive a full hearing in state court despite his best efforts, petitioner has not demonstrated that an evidentiary hearing is required. A state habeas petitioner is entitled to an evidentiary hearing on a claim only if he alleges "facts that, if proven, would entitle him to relief." <u>Turner v. Calderon</u>, 281 F.3d 851, 890 (2002) (quoting <u>Tapia v. Roe</u>, 189 F.3d 1052,

---

[3] Suliman and Quinones are the managers a fast food restaurant where C.V. worked; she allegedly made against them.

4

1056 (9th Cir.1999)) ("[e]ntitlement to an evidentiary hearing based on alleged ineffective assistance, for example, requires a showing that if his allegations were proven at the evidentiary hearing, deficient performance and prejudice would be established"). See also Townsend v. Sain, 372 U.S. 293 (1963) (a defendant is entitled to a federal evidentiary hearing on his factual allegations only if the merits of the factual dispute were not resolved in the state hearing, the state factual determination is not fairly supported by the record as a whole, the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing, there is a substantial allegation of newly discovered evidence, the material facts were not adequately developed at the state-court hearing, or for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing). As discussed more fully below, petitioner has failed to demonstrate that he is entitled to an evidentiary hearing.

    A. The Tape Analysis

    Petitioner claims that he is entitled to an evidentiary hearing on the issue of the post-trial forensic analysis of the pretext telephone call. Petitioner appears to argue that his trial counsel was ineffective in failing to investigate the accuracy of the transcript of the pretext telephone call. The record shows that the transcript was prepared for the jury to read while the pretext tape was played; the transcript was collected from the jury; and it was not admitted into evidence. The evidence submitted to the jury was the actual recording of the pretext tape, which the jury heard for themselves.

///
///
///
///
///
///
///

2 reflected the following:

3   Jolynne[4]:   "Well, that's kind of what I needed to know. Um, she told me that you did go as far as that, putting your finger in her vagina and I've...I need, you
4       know, to know if that was, you know, if that was it or..."

5   Jeffrey:   No, that was...

6   Jolynne:   ....if more happened and what we need to do next.

7   Jeffrey:   ...it...what do you mean, what we need to do next?

8 (Clerk's Transcript (CT) 214.)

9   Petitioner's expert analyzed the tape of the pretext call and found that the actual
10 dialogue on the tape was the following:

11   Jolynne:   "Well, that's kind of what I needed to know. Um, she told me that you did go as far as that, putting your finger in her vagina and I've...I need, you
12       know, to know if that was, you know, if that was it or..."

13   Jeffrey:   No, that was...

14   Jolynne:   ....if more happened and what we need to do next.

15   Jeffrey:   ...(unintelligible)...what do you mean, what we need to do next?

16 (Pet. (doc. 1) at 13:2-6.)

17   The crux of petitioner's argument is that the word "it" made the tape a "smoking
18 gun," showing that petitioner was guilty of penetrating C.V.'s vagina. Petitioner states that he
19 was trying to tell Jolynne that he did not put his finger in C.V.'s vagina. He testified at trial that
20 his statements during the pretext call were not an admission. (Reporter's Transcript (RT ) 873)
21 He asserts that, without any defense theory to support his version of the tape–such as a forensic
22 expert, he was left vulnerable to the prosecution's argument that he was lying.
23   The only portion of the transcript challenged by petitioner is whether a word was
24 "it" or was instead an unintelligible utterance. Further, the jury listened to the original tape and

25
26   [4]The victim's mother

6

drew their own conclusions about the content.    Even if petitioner could prove that the challenged word of the transcript was incorrect, this would not establish a colorable claim that he is entitled to relief. Turner, 281 F.3d at 890; Williams, 384 F.3d at 586.

Further, petitioner cannot show that he suffered prejudice from trial counsel's failure to procure a forensic expert to opine on the accuracy of the pretext call transcript. See Earp, 431F.3d at 1180; Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003).  The transcript was never admitted into evidence; it was used as an aid for the jury while they listened to recording of the pretext tape, which was admitted into evidence.  And, as mentioned above, the record shows that petitioner was able to challenge the prosecutor's assertion that he admitted penetration of C.V. during the pretext call by testifying at trial himself as to what he meant during the call.

Petitioner has not established that he is entitled to an evidentiary hearing on this issue.

### B.     The Testimony of Suliman and Quinones

Petitioner argues that he is entitled to an evidentiary hearing on the newly discovered evidence that managers at the fast food restaurant where C.V. worked in 2002, Wassim Suliman and Tina Quinones, made statements that C.V. had made false abuse accusations against them and other people.  Petitioner also appears to argue that he is entitled to an evidentiary hearing on whether his trial counsel was deficient for failing to call Suliman and Quinones as witnesses during petitioner's trial.

The record reflects that petitioner's counsel discovered that C.V. had made false accusations of abuse against Quinones and Suliman in April 2003. (CT 416-418.)  Trial counsel discovered these witnesses after the end of petitioner's trial but before his sentencing. (Id.) Petitioners' counsel filed a sentencing brief detailing the discovery of these witnesses and their

///
///
///

1  statements that C.V. had made false accusations of abuse. (Id.) Petitioner's trial counsel
2  requested that the trial judge declare a mistrial based on this evidence and argued that the
3  prosecution had a duty to turn this evidence over to the defense during discovery.[5] (Id.)
4        In a transcript of Suliman's phone conversation with petitioner's post-trial
5  investigator, the investigator asks if Suliman was "approached by a member of [petitioner's]
6  defense team." (Petition for Writ of Habeas Corpus in the El Dorado County Superior Court
7  (Lodged Exhibit), Ex. D.) Suliman responded that he was called a "few days before court" that
8  he had to go into court and he was asked "a few questions about..how he knew her." (Id.)
9  Suliman mentioned that "one of the gentlemen on [petitioner's] defense team...mention[ed]
10  [Suliman] right in front of the judge, he said ' you know we have her employer from
11  Weinerschnitzel, who said that she made accusation [sic] toward him,' they were trying to use
12  that point that she makes accusations." (Id.).
13        Petitioner has not presented anything to the court which indicates that trial counsel
14  could have or should have discovered Quinones and Suliman prior to petitioner's trial, or that the
15  prosecution had any idea that these witnesses existed. Petitioner cannot show a failure to
16  investigate on the part of his trial counsel. See Earp, 431 F.3d at 1116; Gonzalez, 341 F.3d at
17  903. Petitioner does not make a showing that he was prejudiced by Quinones and Suliman not
18  testifying at his trial. The record reveals that Quinones did not see the letter written by C.V.
19  when she quit. (Petition for Writ of Habeas Corpus in the El Dorado County Superior Court
20  (Lodged Exhibit), Ex. D.) Suliman stated that the letter did not contain allegations of sexual
21  abuse, but instead said that the managers were abusive and any attempt to further contact C.V.

---

[5] It is not clear why trial counsel believed that the prosecution would be privy to C.V.'s accusations against her managers; trial counsel apparently believed that C.V. made the accusation through a letter delivered to the manages, which was written with the assistance of her foster father who was a police officer in Folsom, California. However, a reading of the statement of Wasim Suliman indicates that the letter stated that management was horrible and that any attempt to contact C.V. would be viewed as harassment but did not specifically accuse any manager of sexual misconduct.

8

would be viewed as harassment. (Id.) Suliman further stated that he did not believe that C.V. wrote the letter herself. (Id.) These statements do not indicate that C.V. levied false accusations of abuse against Suliman and Quinones. In short, further factual development of the credibility of Suliman's and Quinones's testimony would not, if proven, establish the right to relief. See Totten, 137 F.3d at 1176 (9th Cir. 1998).

Petitioner is not entitled to an evidentiary hearing on this issue.

### C. The Juvenile Dependency Records

Petitioner asserts that he is entitled to an evidentiary hearing to develop a possible Brady claim that evidence contained in C.V.'s juvenile dependancy hearing would be exculpatory. Petitioner believes that the dependency records reveal that C.V. falsely accused her father and foster family of abusing her. Petitioner Here, however, the record reveals that the prosecution disclosed to petitioner's trial counsel that C.V. had made accusations about her father and had been placed in a foster home. (CT 96). The outcome of the dependency hearings does not change the fact reflected in the record that the prosecution disclosed the favorable, material information that C.V. had also accused her father of sexual misconduct. Further factual development of this issue–that the accusations against C.V.'s father were ultimately false, would not establish the right to relief. See Totten, 137 F.3d at 1176.

The record also shows that petitioner's trial counsel was able to develop petitioner's claim that C.V. was not credible due to her accusing her father of sexual abuse at trial. Petitioner's trial counsel was able to cross-examine C.V. about this issue. (RT 318-321.) The underlying record shows that petitioner has had a full and fair opportunity to factually develop his claim that C.V. is not credible due to accusations of abuse against others. See Townsend, 372 U.S. at 313. Further, the record shows that the trial court reviewed C.V.'s juvenile records and concluded that they did not contain any information which the defense could use to attack C.V.'s credibility. (CT 83.)

Petitioner is not entitled to an evidentiary hearing on this issue.

IT IS ORDERED THAT petitioner's May 26, 2006 (doc. 16) motion for discovery and/or an expanded record and his June 9, 2006 motion (doc. 26) for an evidentiary hearing are denied.

DATED: August 1, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE