1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEFFREY SCOTT BOWMAN,

11          Petitioner,                         No. CIV S-06-0314 FCD CMK P

12       vs.

13   JOSEPH S. WARCHOL,

14          Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner, with retained counsel, proceeding with this

17   application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

18   I.     Background[1]

19          A jury convicted petitioner of two counts of non-forcible penetration of a minor

20   on March 11, 2003.  The victim, C.V., was fourteen years old at the time of the offenses.

21   Petitioner was a twenty-two year old Placer County Deputy Sheriff.  C.V. met petitioner because

22   he was a friend of her brother and often spent time at her parent's home.

23          On several different occasions, petitioner digitally penetrated C.V.  On at least one

24   occasion, petitioner placed C.V.'s hand on his penis and forced her to rub it.  After this incident,

25   C.. V. wiped her wet hand on petitioner's stomach, his shirt and a sleeping bag, which petitioner

26   _____

[1]For a more detailed discussion of the facts see the opinion of the California Court of
Appeal, Third Appellate District's June 9, 2004 decision.  (Resp. Lodged Doc. # 3.)

1  had placed over himself and C.V.  These events occurred at C.V.'s parent's home in their

2  downstairs recreation room; several occurred in petitioner's truck;  one occurred in an equipment

3  shed at a little league park; another happened in a boat in petitioner's closed garage.

4         C.V. stated that she did what petitioner wanted in order to "get it over with" and

5  that she was intimidated by his sheriff's department utility belt.  C.V. eventually disclosed the

6  incidents to two friends and a former teacher.  A school counselor and law enforcement were

7  notified.  C.V. testified that, when a male deputy sheriff arrived, she got scared because she

8  assumed that all male officers were like petitioner.

9         At the request of a sheriff's department detective, C.V.'s mother made a pretext

10  call to petitioner.  On the tape, petitioner admitted that he had placed his finger in C.V.'s vagina,

11  maybe three times.  Petitioner assured C.V.'s mother that C.V. had initiated everything and stated

12  that he knew that the relationship had gotten out of hand, but was glad that he caught it when he

13  did.  After the telephone call, petitioner went to C.V.'s house, where he cried and told both C.V.

14  and her mother that he was sorry.  C.V. underwent a medical exam in May 2001.  The exam was

15  inconclusive but consistent with C.V.'s version of events.

16  II.    Standards for Granting Habeas Relief

17         An application for a writ of habeas corpus by a person in custody under a judgment

18  of a state court can be granted only for violations of the Constitution or laws of the United States.

19  See 28 U.S.C. § 2254(a). Federal habeas corpus relief also is not available for any claim decided

20  on the merits in state court proceedings unless the state court's adjudication of the claim:

21
22      (1) resulted in a decision that was contrary to, or involved an unreasonable
    application of, clearly established federal law, as determined by the Supreme Court
    of the United States; or

23
24      (2) resulted in a decision that was based on an unreasonable determination of the
    facts in light of the evidence presented in the State court proceeding.

25  See 28 U.S.C. § 2254(d) (referenced herein in as " § 2254(d)" or "AEDPA"); see also Ramirez v.

26  Castro, 365 F.3d 755, 773-75 (9th Cir.2004) (Ninth Circuit affirmed lower court's grant of habeas

1  relief under 28 U.S.C. § 2254 after determining that petitioner was in custody in violation of his

2  Eighth Amendment rights and that § 2254(d) does not preclude relief); see also Lockyer v.

3  Andrade, 538 U.S. 63, 70-71 (2003) (Supreme Court found relief precluded under § 2254(d) and

4  therefore did not address the merits of petitioner's Eighth Amendment claim).  Courts are not

5  required to address the merits of a particular claim, but may simply deny a habeas application on

6  the ground that relief is precluded by 28 U.S.C. § 2254(d). See Lockyer, 538 U.S. at 71

7  (overruling Van Tran v. Lindsey, 212 F.3d 1143, 1154-55 (9th Cir.2000) in which the Ninth

8  Circuit required district courts to review state court decisions for error before determining whether

9  relief is precluded by § 2254(d)). It is the habeas petitioner's burden to show he is not precluded

10 from obtaining relief by § 2254(d). See Woodford v. Visciotti, 537 U.S. 19, 25 (2002).

11          The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are

12 different. As the Supreme Court has explained:

13          A federal habeas court may issue the writ under the "contrary to" clause if the state
            court applies a rule different from the governing law set forth in our cases, or if it
14          decides a case differently than we have done on a set of materially
            indistinguishable facts. The court may grant relief under the "unreasonable
15          application" clause if the state court correctly identifies the governing legal
            principle from our decisions but unreasonably applies it to the facts of the
16          particular case. The focus of the latter inquiry is on whether the state court's
            application of clearly established federal law is objectively unreasonable, and we
17          stressed in Williams [v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389
            (2000) ] that an unreasonable application is different from an incorrect one.
18

19 Bell v. Cone, 535 U.S. 685, 694 (2002). A state court does not apply a rule different from the law

20 set forth in Supreme Court cases, or unreasonably apply such law, if the state court simply fails to

21 cite or fails to indicate an awareness of federal law. See Early v. Packer, 537 U.S. 3, 8 (2002).

22          The court will look to the last reasoned state court decision in determining whether

23 the law applied to a particular claim by the state courts was contrary to the law set forth in the

24 cases of the United States Supreme Court or whether an unreasonable application of such law has

25 occurred. See Avila v. Galaza, 297 F.3d 911, 918 (9th Cir.2002), cert. dismissed,538 U.S. 919

26 (2003). Where the state court fails to give any reasoning whatsoever in support of the denial of a

1  claim arising under Constitutional or federal law, the Ninth Circuit has held that this court must

2  perform an independent review of the record to ascertain whether the state court decision was

3  objectively unreasonable. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003). In other

4  words, the court assumes the state court applied the correct law, and analyzes whether the decision

5  of the state court was based on an objectively unreasonable application of that law.  It is

6  appropriate to look to lower federal court decisions to determine what law has been "clearly

7  established" by the Supreme Court and the reasonableness of a particular application of that law.

8  See Duhaime v. Ducharme, 200 F.3d 597, 598 (9th Cir.1999).

9  III.    Arguments and Analysis

10         A.    Prosecutorial Misconduct

11              Petitioner claims that his right to a fair trial, arising under the Due Process Clause

12  of the Fourteenth Amendment was violated by prosecutorial misconduct.  Petitioner argues that

13  the prosecutor misrepresented the following: the pretext tape, a photograph of the petitioner's

14  garage with the boat inside, and evidence of semen on sleeping bags.  Petitioner also claims that

15  the prosecutor improperly vouched for C.V.'s credibility.

16              Success on a claim of prosecutorial misconduct requires a showing that the

17  conduct so infected the trial with unfairness as to make the resulting conviction a denial of due

18  process. See Greer v. Miller, 483 U.S. 756, 765 (1987).  The conduct must be examined to

19  determine "whether, considered in the context of the entire trial, that conduct appears likely to

20  have affected the jury's discharge of its duty to judge the evidence fairly." United States v.

21  Simtob, 901 F.2d 799, 806 (9th Cir. 1990).   Generally, if an error of constitutional magnitude is

22  determined, a harmless error analysis ensues.  Error is considered harmless if the court, after

23  reviewing the entire trial record, decides that the alleged error did not have a "substantial and

24  injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S.

25  619, 638 (1993).  Error is deemed harmless unless it "is of such a character that its natural effect is

26  to prejudice a litigant's substantial rights." Kotteakos v. United States, 328 U.S. 750, 760-761

4

1   (1946).

2         1.      Procedural Default

3         Respondent argues that petitioner has procedurally defaulted his claims of

4   prosecutorial misconduct concerning the photograph of the garage and boat, the sleeping bags,

5   and the credibility of the victim/witness.

6         Based on concerns of comity and federalism, federal courts will not review a

7   habeas petitioner's claims if the state court decision denying relief rests on a state law ground that

8   is independent of federal law and adequate to support the judgment. See Coleman v. Thompson,

9   501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989).  The Ninth Circuit has noted

10  that "the procedural default is not "adequate" if the state courts themselves bypass the petitioner's

11  default and consider his claims on the merits..."  Harmon v. Ryan, 959 F.2d 1457, 1461 (9th Cir.

12  1992) (overruled on other grounds).

13        Here, the appellate court denied petitioner's claims concerning the photograph of

14  the garage and boat, the sleeping bag and vouching for the credibility of C.V. on procedural

15  grounds, but also appeared to consider the merits of the claims. (Resp. Lodged Doc. # 3.)

16  Similarly, the superior court considered the merits of these claims in its denial of petitioner's state

17  habeas petition.  (Resp. Lodged Doc. # 4.)  As it is not clear that petitioner's claims are

18  procedurally barred, the court will consider the merits of these claims, because, as discussed more

19  fully below, these claims are without merit.  See Franklin v. Johnson, 290 F.3d 1223, 1232 (9th

20  Cir. 2002) (stating that the procedural bar issue must not always be resolved first–procedural bars

21  are not infrequently more complex than the merits issues, so it may well make sense in some

22  instances to proceed to the merits if the result will be the same.)

23        2.      Pretext Telephone Call and Tape

24        Petitioner claims that the prosecutor misstated the pretext call when the prosecutor

25  represented, in closing argument, that petitioner had admitted to sexual misconduct on the tape

26  when petitioner had done no such thing.  The record shows that prior to closing arguments, the

1    court admonished the jury that statements made by the attorneys were not evidence in the case.

2    (RT 1085.)  During closing argument, the prosecutor argued that petitioner "knows what's going

3    to happen because he admitted on tape that he stuck his finger in [the victim's] vagina...."  (RT

4    1135.)  The prosecutor referred to several parts of the pretext tape and said "[L]isten to the tape.

5    Listen to the tape a hundred times.  Come to your own conclusions."  (RT 1135.)

6              In its denial of petitioner's habeas claim, the Superior Court wrote that petitioner's

7    "outrageous assertion that the prosecutor knowingly misled the jury [regarding the pretext tape

8    and the transcript] is premised on petitioner's contention that his expert's version of the tape is the

9    correct one."  (Resp. Lodged Doc. # 4 at 3:2-5.)  The Superior Court reasoned that the jury was

10   the trier of fact; the jury heard the tape; the jury convicted petitioner.  (Resp. Lodged Doc. #4 at

11   3.)  The court cannot find that the state court's ruling is contrary to, or an unreasonable application

12   of, federal law.  See 28 U.S.C. § 2254(d).  Further, petitioner has not shown that the prosecutor's

13   closing argument regarding the pretext tape so infected the trial with unfairness as to make the

14   resulting conviction a denial of due process.  See Greer, 483 U.S. at 765.  In the context of the

15   entire trial, the prosecutor's admonishment to the jury that petitioner knew what was coming

16   because he had admitted to sexual misconduct and to listen to the tape does not appear likely to

17   have affected the jury's ability to judge the evidence fairly.  See Simtob, 901 F.2d at 806.  This

18   claim should be denied.

19              3.    Photographs of Petitioner's Boat

20   _____Petitioner argues that the prosecutor unfairly took advantage of the trial court's

21   denial of his request for a site visit to his garage by arguing that the defense photos depicting the

22   size of the garage were inaccurate and implying that the defense had chosen to prove the size of

23   the garage through photographs.

24              After C.V. testified about a sexual encounter with petitioner in his boat in his

25   closed garage, the defense moved to take the jury to petitioner's residence to see that the boat, on

26   its trailer, could not fit into the garage so as to close the door.  The prosecutor objected on the

6

1    grounds that a site visit would be time consuming and draw inordinate attention to a small issue in

2    the case.  The prosecutor suggested that the defense could address the issue through photographs

3    or testimony.  The trial judge agreed and denied the site visit, ruling that the undue time

4    consumption outweighed the probative value.  The defense introduced photographs of the boat

5    and the garage.  Petitioner testified that the garage door could not be closed when the boat was

6    inside because the trailer hung out approximately two feet.

7            In his closing, the prosecutor argued that:

8         [t]he defendant said there's no way that garage could be closed.  You look for
          yourself.  This is a four, almost a five car garage; single, single, and a two car
9         garage there, so four car garage.  The first picture put in by the Defense is this, just
          a site picture.  You'll have these back in the jury room, too.  I just want to point
10        them out.  This is the overall picture of that garage, and you come to your own
          conclusions about whether you could move that in that garage.

11

12   (RT 1139, Resp. Lodged Doc. # 3 at 6,7.)

13           Petitioner appears to contend that this statement was a misstatement of facts.  The

14   state court concluded that the prosecutor's closing statement was not misconduct.  The prosecutor

15   did not suggest that the defense photographs were inaccurate, but instead assumed the

16   photographs were accurate and assumed that they supported his own argument that the garage

17   door could be closed while the boat was inside; the prosecutor invited the jury to draw its own

18   conclusions.  After careful review of the record, this court finds that the state court's

19   determination of the facts was entirely reasonable and that its rejection of the claim was neither

20   contrary to nor an unreasonable application of controlling principles of federal law.  See 28 U.S.C.

21   § 2254(d).  This claim should be denied.

22           4.    Evidence of the Sleeping Bag

23           Petitioner argues that the prosecutor misrepresented to the jury that the lack of

24   corroboration for the masturbation incident C.V. described was due to C.V.'s mother suppressing

25   the incriminatory sleeping bag and only turning over sleeping bags which did not contain traces of

26   semen.

1       The record indicates that the parties stipulated during trial that there were two

2  sleeping bags recovered from C.V.'s residence, which were tested for semen.  (CT 205.)  Areas of

3  the sleeping bag illuminated with a forensic light source were consistent with the presence of

4  biological evidence, but without further testing it was impossible to determine the presence or

5  non-presence of semen.  (CT 205.)  At trial, C.V.'s mother testified that there were five sleeping

6  bags.  (RT 484.)  She told the detective that there were two or three sleeping bags out on chairs.

7  (RT 485.)  The detective understood this to mean that there were only two sleeping bags; the ones

8  which he found out on the chairs.  (RT 771.)  The detective discovered the other bags mid-way

9  through jury selection.  (RT 772.)

10      In his closing argument, the prosecutor argued that the jury had heard the

11  stipulation that there was no sperm on the sleeping bags, but that the "only problem is, there's five

12  sleeping bags."  (RT 1180.)  He further stated "Thanks to [C.V.'s mother] we don't know what's

13  what on the other sleeping bags."  (RT 1180.)

14      The state court concluded that it was not reasonably likely that the jury applied the

15  prosecutor's remarks to conclude that C.V.'s mother withheld evidence which would have

16  incriminated petitioner.  The state court reasoned that although the prosecutor's argument was

17  factually inaccurate in that it appeared to blame the mother for the detective's misunderstanding, it

18  did not fairly imply petitioner's guilt and was not prejudicial.  After careful review of the record,

19  this court finds that the state court's determination of the facts was entirely reasonable and that its

20  rejection of the claim was neither contrary to nor an unreasonable application of controlling

21  principles of federal law.  See 28 U.S.C. § 2254(d).  This claim should be denied.

22              5.    Prosecution Vouching for C.V.'s Credibility

23      Petitioner asserts that the prosecutor impliedly vouched for C.V.'s credibility by

24  telling the jury that his office had spent months working with C.V.  During cross-examination of

25  C.V., defense counsel questioned C.V. about meeting with various people from the prosecutor's

26  office; how long she had known them, whether she liked them; and if she confided in them. (RT

8

1   293-295.)  During closing arguments, the prosecutor argued that the jury had heard evidence of

2   "how it took months of working with [C.V.] and the rapport she built up with people from [the

3   prosecutor's] office."  (RT 1114.)

4          The state court reasoned that the prosecutor's statements were a fair comment on

5   the evidence that defense counsel solicited from C.V.  The prosecutor could deduce from C.V.'s

6   testimony on cross-examination that she had waited to report some incidents until a rapport was

7   established.  The prosecutor did not make any comment on the veracity of C.V.'s testimony; he

8   left it to the jury to accept or reject his factual deduction.  After careful review of the transcript,

9   the court finds that the state court's determination of the facts was entirely reasonable and that its

10  rejection of the claim was neither contrary to nor an unreasonable application of controlling

11  principles of federal law.  See 28 U.S.C. § 2254(d).  This claim should be denied.

12          B.     Newly Discovered Evidence

13          Petitioner argues that newly discovered evidence shows that his right to due

14  process and a fair trial were violated.  Petitioner claims that a post-trial forensic analysis of the

15  taped pretext telephone call shows that he did not admit to sexual misconduct and that newly

16  discovered evidence shows that C.V. made false accusations of sexual misconduct against others.

17          Federal habeas corpus relief does not ordinarily serve to review questions about the

18  admissibility of evidence.  See Estelle v. McGuire, 502 U.S. 62 (1991).  A federal court may not

19  interfere with a state court's evidentiary ruling; it may only consider whether the evidence was so

20  prejudicial that its admission, or lack thereof,  violated petitioner's right to due process and a fair

21  trial.  See Fuller v. Roe, 182 F.3d 699, 703 (9th Cir. 1999).  A federal court may only consider

22  whether petitioner's conviction violated constitutional powers.  See Jammal v. Van de Kamp, 926

23  F.2d 918 (9th Cir. 1991).  Due process violations warranting federal intervention are found "only

24  where criminal trials in state courts are conducted in such a manner as amounts to a disregard of

25  the fundamental fairness essential to the very concept of justice...."  Pike v. Dickenson, 323 F.2d

26  856, 860 (9th Cir. 1963).

1.     Post-Trial Forensic Analysis of Taped Pretext Call[2]

Petitioner argues that the post trial forensic analysis of the call shows that the transcript of the pretext call was incorrect; that the prosecutor presented false evidence to the jury when he presented the transcript of the pretext call; and that due process demands that the prosecutor take steps to correct this error.

The prosecutor played a tape of the pretext call for the jury.  The pretext call was a conversation between petitioner and C.V.'s mother.  To aid the jury, they were provided with a written transcript of the call, which was prepared by the detective who investigated the case. Petitioner claims that the transcript was false at a critical point.  The transcript reflected the following:

Jolynne[3]:     "Well, that's kind of what I needed to know.  Um, she told me that you did go as far as that, putting your finger in her vagina and I've...I need, you know, to know if that was, you know, if that was it or..."

Jeffrey:     No, that was...

Jolynne:     ....if more happened and what we need to do next.

Jeffrey:     ...it...what do you mean, what we need to do next?
(CT 214.)

Petitioner's expert analyzed the tape of the pretext call and found that the actual dialogue on the tape was the following:

Jolynne:     "Well, that's kind of what I needed to know.  Um, she told me that you did go as far as that, putting your finger in her vagina and I've...I need, you know, to know if that was, you know, if that was it or..."

Jeffrey:     No, that was...

Jolynne:     ....if more happened and what we need to do next.

Jeffrey:     ...(unintelligible)...what do you mean, what we need to do next?
(Pet. (doc. # 1) at 13:2-6.)

---

[2]Petitioner requested an evidentiary hearing on this issue, which was denied by separate order.

[3]The victim's mother.

1    The crux of petitioner's argument is that the word "it" made the tape a "smoking

2  gun," showing that petitioner was guilty of penetrating C.V.'s vagina.  Petitioner states that he

3  was trying to tell Jolynne that he did not put his finger in C.V.'s vagina.  He testified at trial that

4  his statements during the pretext call were not an admission. ( RT 873.)  The only portion of the

5  transcript challenged by petitioner is whether a word was "it" or was instead an unintelligible

6  utterance.  When he testified, petitioner gave his explanation of the taped conversation.  (RT 871.)

7    In denying petitioner's habeas application, the Superior Court reasoned that "[t]he

8  tape was played for the jury; the twelve jurors heard what they heard."  (Resp. Lodged Doc. # 4, p.

9  2-3.)  The Superior court found that petitioner's assertion that the prosecution presented false

10  evidence is based on his assumption that his expert's version of the tape is correct; however "[t]he

11  jury was the trier of fact; the jury heard the tape; the jury convicted petitioner."  (Resp. Lodged

12  Doc. # 4, p. 2-3.)  A careful review of the record reveals that the state court's determination that

13  there had been no false presentation of the evidence, and therefore no due process violation was

14  reasonable.  This court finds that the state court's rejection of this claim was neither contrary to

15  nor an unreasonable application of the controlling principles of federal law.  See 28 U.S.C. §

16  2254(d).  This claim should be denied.

17    2.    Post-Trial Evidence of False Allegations[4]

18    Petitioner contends that newly discovered evidence shows that C.V. falsely

19  accused others of sexual misconduct, and that failure to allow him to present this evidence denied

20  him due process and a fair trial.

21    After petitioner's trial, but before sentencing, petitioner's investigator discovered

22  that C.V. had made false accusations against the managers at a fast food restaurant where she

23  worked and had made false accusations about her father abusing her.  Petitioner sought to

24  continue sentencing so that he could prepare a motion for a new trial based upon this newly

25  _____

26    [4]Petitioner requested an evidentiary hearing on this issue, which was denied by separate
   order.

1  discovered evidence.  The trial court denied the motion, finding that the new evidence would be

2  cumulative and, impliedly, would not render a different result on retrial.

3          In its denial of petitioner's state habeas petition, the Superior Court reasoned that

4  evidence of alleged false claims by C.V. was presented to the jury.  The Court found that the new

5  evidence was cumulative, would not render a different result on retrial and "certainly did not

6  undermine the prosecutions case."  (Resp. Lodged Doc. # 4, p. 2.)  The record shows that

7  petitioner's trial counsel was able to develop petitioner's claim that C.V. was not credible by

8  introducing evidence during trial that she had made other accusations of abuse.   Petitioner's trial

9  counsel was able to cross-examine C.V. about this issue.  (RT 318-321.)  Therefore, after careful

10 review, this court finds that the state court's determination of the facts was reasonable and not

11 contrary to or an unreasonable application of controlling principles of federal law.  See 28 U.S.C.

12 § 2254(d).  This claim should be denied.

13          C.    Brady Violation

14          Petitioner contends that the prosecutor violated Brady[5] by not disclosing evidence

15 that C.V. made false statements to Child Protective Services and during a juvenile dependency

16 hearing.

17          The suppression of evidence favorable to the accused violates due process where

18 the evidence is material to guilt or punishment, regardless of the good faith of the prosecutor.  See

19 Brady v. Maryland, 373 U.S. 83, 87 (1963).  To establish a violation of the Brady rule, a petitioner

20 must show: 1.  favorable evidence that was exculpatory or impeaching; 2. was suppressed by the

21 state willfully or inadvertently; and 3. with resulting prejudice.   Prejudice is determined by

22 reference to the admissibility of evidence under state law.  Bailey v. Rae, 339 F.3d 1107, 1113

23 (9th Cir. 2003).  The Brady rule does not apply if impeachment evidence is merely cumulative.

24 ───────────────

25       [5]Brady v. Maryland, 373 U.S. 83, 87 (1963) Prosecutors have a duty under due process to
   disclose evidence favorable to an accused upon request, where such evidence is material either to
   guilt or punishment.  See id.  Both exculpatory and impeachment evidence falls within the
26 Brady rule.  See id.

1    See Williams v. Woodford, 306 F.3d 665, 696-697 (9th Cir. 2002).

2           A Brady claim must identify what was undisclosed.  See Phillips v. Woodford, 276

3    F.3d 966, 987 (9th Cir. 2001).  Mere speculation that the government had exculpatory evidence is

4    not sufficient to establish a Brady claim; speculation about the content of government files does

5    not require that the files be made available.  See United States v. Michaels, 796 F.2d 1112, 1116

6    (9th Cir. 1986).

7           Here, the record shows that any evidence contained in the juvenile dependency

8    proceedings would have been cumulative impeachment evidence.  Petitioner's trial counsel was

9    afforded the opportunity to question C.V. during cross-examination about accusations she made

10   concerning her father.  (RT 318-321.)  Further, C.V.'s mother testified that C.V. fabricated stories

11   of abuse to garner attention from friends and school officials.  (RT , 94 and 103.)  Because the

12   evidence believed to be contained in the juvenile dependancy hearing and the Child Protective

13   Services file is cumulative to the impeachment evidence already presented at trial, Brady does not

14   apply.  Williams, 306 F.3d at 696-697.   In short the jury was presented with ample evidence that

15   C.V. had a tendency to fabricate stories of abuse to get attention.  The jury evaluated this, along

16   with the other evidence presented to them and came to their own conclusions.  Accordingly, this

17   court finds, after a careful independent review of the record, that this claim should be denied.

18          D.     Ineffective Assistance of Counsel

19          Petitioner claims that his counsel was ineffective for failing to challenge the

20   accuracy of the pretext call transcript, failing to request an instruction that the transcript was not

21   evidence and the jury should rely on the taped call, failing to object to the prosecutor's closing

22   argument, and failing to timely discover the evidence that C.V. made false accusations against

23   others.

24          In order to prevail on his claim of ineffective assistance of counsel, petitioner must

25   show two things, an unreasonable error and prejudice flowing from that error. See Strickland v.

26   Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the

13

1   circumstances, counsel's performance fell below an objective standard of reasonableness.

2   Strickland, 466 U.S. at 688.  To this end, petitioner must identify the acts or omissions that are

3   alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The

4   federal court must then determine whether in light of all the circumstances, the identified acts or

5   omissions were outside the wide range of professional competent assistance.  See id.  "We strongly

6   presume that counsel's conduct was within the wide range of reasonable assistance, and that he

7   exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg,

8   898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

9         Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S. at

10   693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

11   unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A

12   reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.;

13   see also Williams v. Taylor, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir.

14   2000).

15         A reviewing court "need not determine whether counsel's performance was

16   deficient before examining the prejudice suffered by the defendant as a result of the alleged

17   deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

18   sufficient prejudice . .  that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th

19   Cir. 2002) (quoting Strickland, 466 U.S. at 697).

20         1.    Failure to Challenge the Transcript

21         Petitioner contends that his counsel was ineffective when he failed to challenge the

22   accuracy of the transcript provided to the jury to assist them while they listened to the recorded

23   pretext call.  As described above, petitioner contends that the transcript incorrectly identified an

24   unintelligible sound as the word "it."  Petitioner claims that trial counsel should have listened to

25   the tape several times, concluded that the transcript was incorrect and concluded that a forensic

26   analysis of the tape was warranted.

1    After a review of the record, the court cannot find that petitioner was prejudiced by
2  trial counsel's failure to challenge the accuracy of the transcript provided to the jury.  As the
3  Superior Court reasoned, "[t]he tape was played for the jury; the twelve jurors heard what they
4  heard.  The jury was the trier or fact; the jury heard the tape; the jury convicted petitioner." (Resp.
5  Lodged Doc. # 4, p. 3.) Further, petitioner has not shown how the end result in his trial would
6  have been different if the word "it" had been changed to "unintelligible."  See Strickland, 466
7  U.S. at 693.  Petitioner has not shown that he suffered any prejudice and his claim should be
8  denied.

9              2.    Failure to Request Instruction Regarding the Transcript

10    Petitioner argues that his counsel was ineffective for failing to request an
11  instruction to the jury that the transcript was not evidence.  Failure to request an instruction is not
12  ineffective assistance of counsel when those given by the court are adequate.  See United States v.
13  Feldman, 853 F.2d 648, 666 (9th Cir. 1988).  Here, the record shows that prior to the tape being
14  played, the judge instructed the jury:

15         At this time, folks, we're going to play the tape recording of the phone call.  You'll
           also have a transcript to look at to help you follow along the conversation on the
16         tape.  The transcript may or may not be accurate and the only thing you'll have
           when you deliberate on this case is the actual recording itself.
17  (RT 507)

18    As the instruction was adequate to inform the jury that the transcript may not be accurate,
19  trial counsel's failure to request an instruction did not prejudice petitioner and, therefore was not
20  ineffective.  After careful review, the court finds that this claim should be denied.

21              3.    Failure to Object to Closing Argument

22    Petitioner contends that his trial counsel was ineffective for failing to object to the
23  prosecutor's prejudicial closing argument.  He argues that since the state's case against him
24  hinged on C.W.'s credibility, not "objecting to any prosecutorial misconduct that tended to bolster
25  C.W.'s credibility or undermine petitioner's credibility was probably prejudicial."  (Pet., p. m-
26  17:1-2.)  As discussed above, the trial court concluded that the prosecutor's comments during

closing argument were a fair comment on the evidence presented during trial and that no

prosecutorial misconduct had occurred.   Accordingly, petitioner cannot show that his trial counsel

was ineffective for failing to object to the prosecutor's closing argument.  After careful review of

the record, the court recommends that this claim be denied.

4.   Failure to Discover Impeachment Witnesses

Petitioner contends that his trial counsel was ineffective for failing to conduct an

investigation and discover the statements of Suliman and Quinones, managers at a fast food

restaurant where C.V. briefly worked.  The underlying record shows that the jury was aware that

C.V. had accused others of abuse.  C.V.'s mother testified that C.V. fabricated stories of abuse to

garner attention from friends and school officials.  (RT 94.)  C.V. was questioned on cross-

examination about accusations which she had made about her father.  (RT 318-321.)   The trial

court concluded that the statements from Suliman and Quinones that C.V. made false accusations

of abuse against them were cumulative to the impeachment evidence already presented at trial.

After careful review, the court finds that petitioner has not shown that his counsel's failure to

discover these witnesses earlier prejudiced him and recommends that this claim be denied.

E.   Failure to Grant an Evidentiary Hearing[6]

Petitioner claims that the state court erred in not holding an evidentiary hearing,

which would have allowed petitioner to develop an evidentiary basis for his claims.

Even assuming arguendo that additional facts need be determined and that

petitioner did not receive a full hearing in state court despite his best efforts, petitioner has not

demonstrated that an evidentiary hearing is required. A state habeas petitioner is entitled to an

evidentiary hearing on a claim only if he alleges "facts that, if proven, would entitle him to relief."

Turner v. Calderon, 281 F.3d 851, 890 (2002) (quoting Tapia v. Roe, 189 F.3d 1052, 1056 (9th

Cir.1999)) ("[e]ntitlement to an evidentiary hearing based on alleged ineffective assistance, for

---

[6]Petitioner requested that the District Court grant him an evidentiary hearing.  By separate order, this court denied petitioner's request for an evidentiary hearing.

1  example, requires a showing that if his allegations were proven at the evidentiary hearing,

2  deficient performance and prejudice would be established"). See also Townsend v. Sain, 372 U.S.

3  293 (1963) (a defendant is entitled to a federal evidentiary hearing on his factual allegations only

4  if the merits of the factual dispute were not resolved in the state hearing, the state factual

5  determination is not fairly supported by the record as a whole, the fact-finding procedure

6  employed by the state court was not adequate to afford a full and fair hearing, there is a substantial

7  allegation of newly discovered evidence, the material facts were not adequately developed at the

8  state-court hearing, or for any reason it appears that the state trier of fact did not afford the habeas

9  applicant a full and fair fact hearing).

10         The Superior Court reasoned that petitioner's proffered new evidence was

11  cumulative and that such evidence would not render a different result if a new trial was granted,

12  and denied petitioner's motion for a new trial.  When considering petitioner's request to review

13  C.V.'s records from the juvenile dependency hearing,  the California Court of Appeal, Third

14  Appellate District found that there was no error in failing to disclose these records to defendant at

15  trial.  A review of the record reveals that during the trial, the trial judge reviewed the records from

16  C.V.'s juvenile proceedings and concluded that the records contained no information which the

17  defense could use to attack her credibility.  (CT 83.)  Further, the transcript shows that C.V.'s

18  mother testified that C.V. had a history of fabricating stories of abuse to garner attention;

19  indicating that material facts tending to impeach C.V. were developed at trial. (RT 94.)  After

20  careful review the court finds that there was no due process violation in the state court's failure to

21  grant petitioner's request for an evidentiary hearing.

22         F.   Cumulative Error

23  _____Petitioner's final claim is that the cumulative effect of all of the alleged errors

24  requires reversal of his conviction.  For the reasons set forth in these findings and

25  recommendations, none of the claimed errors resulted in a violation of petitioner's constitutional

26  rights.  This claim for relief should be denied.

IV.     Conclusion

         In accordance with the above, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

         These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, petitioner may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:   August 1, 2006


                                        CRAIG M. KELLISON
                                        UNITED STATES MAGISTRATE JUDGE